UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

      Plaintiff,

v.                                                Criminal Case No. 08-20633
                                                 Honorable Patrick J. Duggan

JERRY LATIMORE and
LUTHER GILFORD,

      Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 2, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

Defendants Jerry Latimore and Luther Gilford (collectively "Defendants") are charged in a one count Indictment with Theft of Trade Secrets in violation of 18 U.S.C. §§ 1832(a)(1)-(4). Presently before the Court are the following motions filed on October 16, 2009:

        (1)    Defendant Latimore's Motion to Dismiss Indictment
                Due to Excessive Pre-Indictment Delay (Doc. 36);

        (2)    Motion of Defendant Gilford to Dismiss Indictment on
                Grounds of Statute of Limitations (Doc. 38);

        (3)    Motion of Defendant Gilford to Dismiss Indictment as
                Duplicitous (Doc. 39);

        (4)    Motion of Defendant Gilford to Dismiss Indictment on

Fifth Amendment Due Process Grounds (Doc. 42).

Gilford has filed a notice of joinder in Latimore's motion to dismiss. (Doc. 49.) Latimore has filed a notice of joinder in Gilford's motions to dismiss (Doc. 41.) On November 10, 2009, the Government filed a consolidated response to Defendants' motions. The Court held a hearing with respect to the motions on November 16, 2009.

### I.     Factual and Procedural Background

According to the Government, this case arises from a scheme to steal trade secrets from Visteon, Incorporated and sell them to American Axle Corporation. At the time, Latimore worked as a Senior Engineer at Visteon and Visteon and American Axle were embroiled in civil litigation involving a contract dispute. Gilford and Latimore were friends.

In late September 2003, Gilford approached American Axle's legal department and indicated that he was representing a Visteon employee who had valuable Visteon documents to sell (including documents that Visteon failed to produce in discovery). Through the month of October, Gilford met with other American Axle representatives, including Chuck Martel (a private investigator hired by a law firm representing American Axle) and conveyed his offer. To demonstrate that the offer was serious, Gilford showed a Visteon document to Martel on October 15, 2003. While Gilford allowed Martel to take notes, he did not allow Martel to take the document. At the end of October, Martel brought the case to the FBI.

Gilford and Martel met again on November 18, at which time Martel gave Gilford

a check for $5,000 in exchange for six (6) Visteon documents. At the request of the FBI, these documents were reviewed by American Axle attorneys involved in the Visteon/American Axle litigation to determine if they had been produced in discovery. Gilford and Martel met again on November 25, at which time Gilford told Martel that there were approximately three to four thousand documents to be sold and that his client would not meet with anyone or talk about the documents until a contract was signed.

At a meeting on December 16, 2003, Martel introduced Gilford to FBI Special Agent William Fleming, who was posing as an attorney working for American Axle. On December 19, Gilford met with Fleming again to discuss the contract and the purchase of the documents. Gilford and Fleming agreed that Gilford would deliver the remaining documents at the next meeting in exchange for cash and a signed agreement. Latimore was to be at the next meeting to confirm that the documents came from Visteon.

On December 22, 2003, FBI agents met with an Associate General Counsel for Visteon, who reviewed some of the documents that Gilford already had provided. Visteon's counsel confirmed that the documents were proprietary Visteon documents which contained confidential information. The following day, Gilford and Latimore met with Agent Fleming. Latimore and Gilford provided Agent Fleming various documents, the parties then signed an agreement, and Agent Fleming paid Gilford and Latimore. Gilford and Latimore then were arrested and transported to the FBI's offices.

A criminal complaint was filed on December 23, 2003. On January 12, 2004, the Government dismissed the criminal complaint allegedly to continue its investigation. On

December 2, 2008, a grand jury sitting in the Eastern District of Michigan returned the pending Indictment.

In the interim, on September 15, 2004, Gilford showed up at the law firm representing American Axle in its dispute with Visteon and asked to speak with an attorney. Although he spoke with an attorney who was not assigned to the litigation, Gilford indicated that he had been "indicted" and was looking for some "financial assistance." The attorney told Gilford that he would need to contact the attorneys who handled the Visteon/American Axle litigation. Those attorneys then contacted the FBI. One of the attorneys then called Gilford on September 21, 2004. The FBI monitored the call. During this call, Gilford indicated that he did not want to talk over the phone but wanted to meet in person. When the attorney refused, Gilford did not pursue the issue further.

From 2004 through 2005, the Assistant United States Attorney assigned to the case (Terrence Berg) continue to pursue the case, including discussions with defense counsel. In November 2005, then-AUSA Berg conducted a "reverse proffer" with Defendants, at which the Government provided a power point presentation of the Government's case. Rule 11 plea agreements also were tendered to Defendants at that time.

Efforts to resolve the case were pursued through 2006. At about that time, AUSA Berg was appointed acting United States Attorney for the Eastern District of Michigan. In March 2008, a new AUSA was assigned to the case and thereafter obtained the Indictment.

**II.     Motions to Dismiss**

    **A.     Statute of Limitations**

Gilford moves to dismiss the Indictment on statute of limitations grounds. The parties agree that the five year statute of limitations set forth in 18 U.S.C. § 3282 governs. The parties disagree, however, as to when the limitations period began to run.

Gilford argues that the acts proscribed by 18 U.S.C. § 1832 were committed by October 2003, and therefore the statute of limitations expired in October 2008. Gilford maintains– in anticipation of what he believes will be the Government's response– that theft of a trade secret is not a continuing offense. In fact, the Government does not make this argument in response to Gilford's motion. Instead, the Government maintains that the offense was not completed until December 23, 2003, when Gilford and Latimore actually handed over the documents to Agent Fleming.

    The Indictment alleges, in relevant part, that Defendants:

> did knowingly and intentionally, with the intent to convert information that included a trade secret . . . belonging to Visteon, Incorporated, which were related to products produced for interstate and foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret:
>
> (a)    steal, or without authorization appropriate, take, and carry away such information, in violation of Title 18, United States Code, Section 1832(a)(1);
>
> (b)    copy and duplicate such information without authorization, in violation of Title 18, United States Code [Section] 1832(a)(2);

  (c)  receive and possess such trade secrets knowing the same to have been stolen, appropriated, and converted without authorization, in violation of Title 18, United States Code [Section] 1832(a)(3); and

  (d)  aid and abet each other and attempt to do all of the above, in violation of Title 18, United States Code [Section] 1832(a)(4).

(Doc. 1.) Notably, the Government indicates in its response brief that it "does not dispute that Latimore was in lawful possession of the documents [at issue]." (Doc. 51 at 7.) As a result, the crime was not complete– at least with respect to Latimore– simply when he took possession of Visteon's documents.

  Also as a result, the Court does not believe that Latimore appropriated the documents without Visteon's authorization until he delivered the documents to American Axle on December 23, 2003. The allegation in the Indictment that Latimore violated § 1832(a)(1)[1] and that Gilmore aided and abetted Latimore in this violation therefore are not time-barred. The Court is not aware of when Gilford received and possessed the documents or when Latimore and/or Gilford copied and duplicated the documents. Thus the Court cannot rule as to whether the statute of limitations bars the Government's charge that Defendants violated § 1832(a)(2)[2] or its charge that Gilford violated

---

[1] 18 U.S.C. § 1832(a)(1) refers to the stealing or without authorization appropriating, taking, and carrying away of the information.

[2] 18 U.S.C. § 1832(a)(2) refers, in part, to copying and duplicating the information. Notably, this section also includes the act of delivering the information (which Gilford and Latimore completed on December 23, 2003); however, the Indictment does not specifically charge them with violating the statute through this action.

§§ 1832(a)(1). The Court concludes, however, that the statute of limitations bars the Government's charge that Latimore and Gilford engaged in attempted theft of trade secrets in violation of § 1832(a)(4).

Attempted theft of trade secrets requires proof that the defendant (1) had the intent needed to commit a crime defined by the statute, and (2) performed an act amounting to a "substantial step" toward the commission of that crime. *See United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998). These elements were satisfied the first time Gilford approached American Axle offering to sell Visteon's documents. As indicated above, this occurred in late September 2003. The five-year statute of limitations therefore bars the Government's attempted theft of trade secret charge pursuant to § 1832(a)(4).

Based on the above, the Court grants in part and denies in part Gilford's motion to dismiss based on the statute of limitations (Doc. 38).

### B. Due Process Violation Based on Pre-Indictment Delay

Latimore moves to dismiss the Indictment based on what he asserts was "excessive and unjustifiable" pre-indictment delay. The statute of limitations sets a time limit on pre-indictment delay by barring prosecution if a defendant is not indicted by the time the limitations period has run. However, "the statute of limitations does not fully define the [defendant's] rights with respect to the events occurring prior to indictment." *United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 465 (1971). The Due Process Clause of the Fifth Amendment requires dismissal of an indictment if the defendant shows that any pre-indictment delay "caused substantial prejudice to the [defendant's] rights to a fair

7

trial and that delay was an intentional device to gain tactical advantage over the accused." *Id.*

Latimore argues that he has suffered actual prejudice by the pre-indictment delay in this case through the loss of evidence and witnesses. Specifically, Latimore asserts prejudice due to the loss of his laptop computer, which the FBI seized upon his arrest in December 2003 and has since lost. (*See* Doc. 36 Ex. A (Macomb County Sheriff Report indicating that Latimore's laptop was logged into evidence but could not be found when the property room subsequently was searched)). Latimore contends that information on the computer "would have shown that [he] was lawfully in possession of Visteon materials" and "that the designation of some documents had been changed from non confidential to confidential as a result of [the Visteon/American Axle litigation]." (*Id.* at 3.) Latimore further contends that "[o]ther facts critical to [his] defense were contained within this computer as well." (*Id.*) Finally, Latimore claims that he has been denied the ability to find material witnesses as a result of the delay and that the memories of other witnesses will have faded. Latimore maintains that the Government lacks a valid or justifiable reason for the pre-indictment delay and, therefore, "it can be inferred that the delay was intentional to gain a tactical advantage." (*Id.* at 4.)

Latimore fails to establish "substantial prejudice" resulting from the pre-indictment delay in this case. The Sixth Circuit Court of Appeals has rejected a defendant's claim of prejudice based on witnesses' loss of memory, finding that the claim fails as a matter of law. *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003), *cert. denied*, 541 U.S.

8

990 (2004) (citing *Payne v. Rees*, 738 F.2d 118, 121-22 (6th Cir. 1984)). Latimore's vague assertions that material witnesses have been lost as a result of the delay and that "other facts" critical to his defense were contained on his lost laptop computer also are insufficient to support a finding that he has suffered prejudice by the delay. *See Randle v. Jackson*, 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008) (citing *United States v. Beszborn*, 21 F.3d 62, 67 (5th Cir. 1994) ("[A] vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish prejudice from a pre-charge delay.")

With respect to the loss of his laptop computer, the Government concedes in its response brief that Latimore lawfully possessed Visteon's documents. Therefore, Latimore cannot claim prejudice resulting from the loss of information on the computer showing the same. The Court does not believe that Latimore establishes substantial prejudice to his defense because he no longer has access to his laptop to establish a change in the designation of "some" documents as a result of the Visteon/American Axle litigation. The Court expects that proof of any changes can be gained through other means (e.g. discovery from Visteon). Moreover, the Government indicates that it is attempting to locate a mirror image of the laptop's hard drive that it provided to Visteon pursuant to a discovery order in the Visteon/American Axle litigation and that it is inquiring as to whether the hard drive still is available. (Doc. 51 at 7 n. 3.)

In any event, Latimore fails to demonstrate that the pre-indictment delay was an intentional device by the Government to gain a tactical advantage over Defendants.

There is no evidence that the delay was intentional. In fact, Latimore himself surmises that the case "appears to have 'fallen through the cracks.'" (Doc. 36 at 4.) In actuality, the Government's response reflects that it was attempting to negotiate a settlement with Defendants through at least sometime in 2006 and that the case may have fallen through the cracks at some point in 2006– not because of any wrongful intent– but due to Mr. Berg's work load and appointment around that time as First Assistant United States Attorney. Further undermining any claim that the delay was an intentional device to gain a tactical advantage is the fact that the Government provided discovery to Defendants early in the case.

Therefore, the Court denies Latimore's motion to dismiss due to pre-indictment delay (Doc. 36).

### C.     Fifth Amendment Due Process

Gilford also moves to dismiss the Indictment on Fifth Amendment due process grounds based on pre-indictment delay, as well as his claim that the Government engaged in "outrageous conduct." Gilford makes the same or similar arguments as Latimore to demonstrate prejudice resulting from the pre-indictment delay. Gilford does not offer anything different to demonstrate that the delay was an intentional effort by the Government to gain a tactical advantage. With respect to his assertion that the Government engaged in outrageous conduct resulting in the violation of his due process rights, Gilford specifically alleges the following actions or inactions by the Government:

> (1) fail[ing] to notify Visteon of its victimization, then carry[ing] out a sting operation in which it allowed what it believed were trade secrets to circulate unchecked, ignoring its obligation to prevent or limit criminal activity and finally continued to do nothing to protect the alleged "trade secrets," for five years after it dismissed the charges; and/or (2) notif[ying] Visteon of its alleged victimization during the sting operation, watch[ing] Visteon do nothing to protect against a then known risk– in essence doing nothing then to protect the secrecy of those "trade secrets" from disclosure, and finally present[ing] its evidence and indictment to the grand jury knowing that it could not meet an essential element of the offense.

(Doc. 42 at 5.) Gilford also contends that the Government violated his Sixth Amendment right to counsel when the FBI monitored the September 21, 2004 call between himself and an attorney representing American Axle.

Nothing about the facts presented to this Court thus far suggests that the Government engaged in an inappropriate sting operation or that it did not adequately

protect Visteon's alleged trade secrets. The first set of documents actually given by Gilford to Martel were shown only to lawyers for American Axle who were subject to a non-disclosure agreement in the litigation with Visteon. There is no evidence that there was a "circulation" of the documents at issue.

There also is no support for Gilford's claim that his Sixth Amendment rights were violated when the FBI monitored his phone call with an American Axle attorney after Gilford made a request for "financial assistance." Gilford's conduct suggested that he was engaged in an offense unrelated to the charge offense. *See Texas v. Cobb*, 532 U.S. 162, 121 S. Ct. 1335 (2001) (holding that the Sixth Amendment attaches only to charged offenses and that there is no exception for "factually related" uncharged offenses.) In any event, even if the monitoring of the phone call constituted a Sixth Amendment violation, dismissal pursuant to the Fifth Amendment's Due Process Clause is not the proper response.[3]

"The level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993) (quoting *United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir. 1990), *rev'd on other grounds*, 503 U.S. 540, 112 S. Ct. 1535 (1992)). The Government's conduct that Gilford alleges to support his due process claim

---

[3]The Government indicates that there were no admissions or statements made during the monitored call and that it does not intent to use the contact in any evidentiary way. (Doc. 51 at 17.)

does not fall within "that narrow band of 'the most intolerable government conduct' for which the defense [of a due process violation] is reserved." *Id*. (quoting *United States v. Musslyn*, 865 F.2d 945, 947 (8th Cir. 1989)).

For the above reasons, the Court denies Gilford's motion to dismiss the Indictment on Fifth Amendment due process grounds (Doc. 42).

### D. Duplicity of the Indictment

Gilford contends that the Indictment is duplicitous in that it charges multiple offenses in a single count, causing prejudice to Defendants that cannot be cured by jury instructions. "An indictment is duplicitous if 'it joins in a single count two or more distinct and separate offenses.'" *United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000) (quoting *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981)). However, "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." *United States v. Damrah*, 412 F.3d 618, 622-23 (6th Cir. 2005) (citing Fed. R. Crim. P. 7(c)(1)).

Here, the Indictment alleges a single offense (theft of trade secrets) and alternative means by which Defendants committed the offense. As such, it is not duplicitous. Even if it were, however, the violation is not fatal to the Indictment. *See United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981) ("The rules about multiplicity and duplicity are pleading rules, the violation of which is not fatal to an indictment. Defendant's remedy is to move to require the prosecution to elect either the count or the charge within the count upon which it will rely . . . Additionally, a duplicitous or

multiplicitous indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment.") The Court therefore denies Gilford's motion to dismiss the Indictment as duplicitous (Doc. 39).

### III. Conclusion

Based on the above, the Court denies Gilford's Motion to Dismiss Indictment as Duplicitous and his Motion to Dismiss Indictment on Fifth Amendment Due Process Grounds (Docs. 39 and 42, respectively). The Court also denies Latimore's Motion to Dismiss Indictment Due to Excessive Pre-Indictment Delay (Doc. 36.) Gilford's Motion to Dismiss on Grounds of Statute of Limitations is granted in part and denied in part, in that the Court finds at this time that the charge of attempted theft of trade secrets in violation of 18 U.S.C. § 1832(a)(4) is time-barred.

**SO ORDERED**.

                                                  s/PATRICK J. DUGGAN
                                                  UNITED STATES DISTRICT JUDGE

Copies to:
AUSA Graham L. Teall
Andrew Densemo, Esq.
Fritz E. Berckmueller, Esq.
Virginia A. Davidson, Esq.